# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| WILLIAM M. BRAGG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25-cv-00964 |
| | ) | Magistrate Judge Frensley |
| FRANK BISIGNANO, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12. Plaintiff has filed an accompanying Statement of Material Facts and a Memorandum. Docket Nos. 13, 14. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 17. Plaintiff has filed a Reply. Docket No. 18.

For the reasons stated below, Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 12) is **GRANTED**. This matter is **REMANDED** for further administrative proceedings consistent with this Memorandum Opinion.

## I. INTRODUCTION

Plaintiff protectively filed his application for Disability Insurance Benefits ("DIB") on

1

February 14, 2022, alleging that he had been disabled since January 19, 2019, due to panic disorder, generalized anxiety disorder, agoraphobia, concussion, major depressive disorder, back problem, post-traumatic stress disorder, digestive system problem, gastritis, and ulcers. *See, e.g.*, Docket No. 11 ("TR"), pp. 288-301, 348. Plaintiff's application was denied both initially (TR 71) and upon reconsideration (TR 82). Plaintiff subsequently requested (TR 118-19) and received (TR 38-70) a hearing. Plaintiff's hearing was conducted on August 6, 2024, by Administrative Law Judge ("ALJ") Shannon Heath. TR 38. Plaintiff and vocational expert ("VE"), Edward Smith, appeared and testified. *Id.*

On August 28, 2024, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 12-35. Specifically, the ALJ made the following findings of fact:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2024.

2.    The claimant has not engaged in substantial gainful activity since January 19, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.    The claimant has the following severe impairments: lumbar spondylosis, coronary artery disease, generalized anxiety disorder, depressive disorder, PTSD, panic disorder with agoraphobia (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except frequent push/pull with the right upper extremity; occasional climbing, crawling; frequent balancing, stooping, kneeling, crouching; frequent overhead reaching and fingering with the right upper extremity; avoid concentrated exposure to temperature extremes, pulmonary irritants, unprotected heights and moving machinery; can understand, remember and carry out simple and detailed, not complex

2

tasks; can maintain concentration, persistence or pace for such tasks with customary breaks spread throughout the day; can interact occasionally with the public, appropriately with supervisors and coworkers; can adapt to occasional changes within this type of work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on February 7, 1970 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 19, 2019, through the date of this decision (20 CFR 404.1520(g)).

TR 18-21, 25-26.

On July 1, 2025, the Appeals Council issued a letter declining to review Plaintiff's case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and

3

testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.*, 305 U.S. at 229; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion

4

reached. *Her*, 203 F. 3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole; however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F. 2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec.*, 811 F. 3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F. 3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 U.S. Dist. LEXIS 10558, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F. 2d 361, 374 (6th Cir. 1965).

### B.     Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or

whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42

U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process summarized as follows:

(1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the Alisted@ impairments or its equivalent. [1]  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

See, e.g., 20 CFR §§ 404.1520, 416.920. See also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir.

1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

6

claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F. 2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F. 2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C.§ 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ failed to (1) adequately evaluate and articulate about the medical opinion evidence under 20 C.F.R. § 404.1520c and (2) adequately evaluate Plaintiff's alleged symptoms under 20 C.F.R. § 404.1529 and SSR 16-3p. Docket No. 14. Accordingly, Plaintiff maintains that, pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Commissioner's decision should be reversed and remanded. *Id*.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with

7

or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F. 2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934-35 (6th Cir. 2018), *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F. 3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F. 3d 316, 318 (6th Cir. 1994).

## 1. Evaluation of Medical Opinions

Plaintiff maintains that the ALJ failed to explain why the opinion of the state agency medical consultant, James Lewis, M.D., was persuasive in supporting her light RFC finding, as the ALJ only referred to the "totality of the objective medical evidence of record including the subsequently received medical evidence." Docket No. 14, p. 6, quoting TR 24. Plaintiff also argues the ALJ failed to adequately explain why the opinion of consultative examiner, Terrance Leveck, M.D., was not persuasive, as the ALJ only provided a single sentence asserting the opinion was not consistent with the "totality" of the objective evidence, and suggested the opinion was based on Plaintiff's subjective reports. *Id.* at 5, quoting TR 24. Plaintiff says the ALJ must explain why she believed an opinion was less persuasive because it "appears" to have been based on Plaintiff's subjective complaints. *Id.* at 8. Plaintiff alleges the ALJ's analysis of these medical opinions, which are the sole evaluations of Plaintiff's physical functioning, "falls short of the ALJ's duty to explain how she considered the persuasiveness of the various opinions" and thus

8

undermines her RFC determination. *Id.* at 5.

Defendant responds that the ALJ properly considered the medical opinions and prior administrative medical findings in evaluating Plaintiff's RFC. Docket No. 17, p. 5, citing TR 23-25. Defendant points to the ALJ's review of the opinions of Dr. Leveck, Mistie Germek, Ph.D, Alton Apleton, M.D., and state agency medical consultants, and argues the ALJ's resolution of conflicts between various medical opinions and prior administrative medical findings was proper and complied with appropriate regulations. Docket No. 17, p. 6. Regarding state agency medical consultant Dr. Lewis, Defendant argues the ALJ found that Dr. Lewis's findings were "generally consistent with the totality of the objective medical evidence of record," and that while the ALJ did not repeat her consideration of the record when discussing Dr. Lewis's findings, she is not required to do so. *Id.* at 8-9. Defendant also asserts that the ALJ already considered the fact that Dr. Lewis did not have access to later dated records, and thus properly weighed the relevant factors in coming to her conclusion that the opinion was persuasive. *Id.* at 9, citing TR 24. Regarding Dr. Leveck, Defendant asserts the ALJ properly found Dr. Leveck's opinion not consistent with the totality of the objective medical evidence, which the ALJ had "previously discussed" within the decision. *Id.* at 10.

Plaintiff replies that the "coherent explanation" required by § 404.1520c must explain why a particular medical opinion is supported by or consistent with the medical record, beyond just referring to a general recitation of the medical evidence of record. Docket No. 18, p. 1. Plaintiff reiterates his argument regarding Dr. Lewis, stating "the problem is that the ALJ vaguely gestured to the record as a whole and then declared the opinion consistent with it, without identifying what evidence supported that conclusion or explaining why." *Id.* at 2 (citation modified). Additionally, Plaintiff argues the ALJ did not provide an adequate "thread of reasoning" in finding Dr. Leveck's

9

opinion inconsistent with the totality of the objective medical evidence. *Id.* at 3.

On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules revised the policies for claims filed on or after March 27, 2017, and set forth the rules for evaluating opinion evidence (both medical and nonmedical). 20 C.F.R. §§ 404.1527, 416.927. *See* "Revisions to Rule Regarding the Evaluation of Medical Evidence," available at https://www.ssa.gov/disability/professionals/bluebook/revisions -- rules.html. Plaintiff filed his/her application after March 27, 2017. TR 288-301. As such, Plaintiff's case is governed by the rules that were implemented on March 27, 2017. *See* 20 C.F.R. § 404.614 (generally, an application for benefits is deemed filed on the day it is received by an SSA employee). The new regulations provide as follows:

> **(a) How we consider medical opinions and prior administrative medical findings.** We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (*paragraph (c)(1)* of this section and consistency (*paragraph (c)(2)* . . . .
>
> **(b) How we articulate our consideration of medical opinions and prior administrative medical findings.** We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:
>
> > **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to

10

articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

**(2) Most important factors.** The factors of supportability (*paragraph (c)(1)* of this section) and consistency (*paragraph (c)(2)* of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in *paragraphs (c)(3) through (c)(5)* of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (*paragraph (c)(1)* of this section) and consistent with the record (*paragraph (c)(2)* of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in *paragraphs (c)(3) through (c)(5)* of this section for those medical opinions or prior administrative medical findings in your determination or decision.

**(c) Factors.** We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case;

**(1) Supportability.** The more relevant the objective medical evidence and explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

11

**(2) Consistency.** The more consistent a medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

**(3) Relationship with the claimant.** This factor combines consideration of the issues in *paragraphs (c)(3)(i) through (v)* of this section.

> **(i) Length of the treatment relationship.** The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

> **(ii) Frequency of examinations.** The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

> **(iii) Purpose of the treatment relationship.** The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

> **(iv) Extent of the treatment relationship.** The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

> **(v) Examining relationship.** A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

**(4) Specialization.** The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

**(5) Other factors.** We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence

12

showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

**(d)  Evidence from nonmedical sources.**  We are not required to articulate how we considered evidence from nonmedical sources using the requirements in *paragraphs (a)-(c)* in this section.

20 C.F.R. § 404.1520c.

State agency medical consultant Dr. Lewis gave an opinion on Plaintiff on April 28, 2023, which was summarized by the ALJ as follows:

> The State agency consultant, James Lewis, M.D. submitted an opinion at Exhibit 4A finding the claimant can engage in a limited level of light work with frequent pushing/pulling with the right upper extremity; occasionally climb ramps, stairs, ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, crawl; frequent overhead reaching and fine manipulation with the right upper extremity; avoid concentrated exposure to extreme cold/hot, pulmonary irritants and hazards.

TR 24 (citation modified); *see* TR 88-90.

When evaluating Dr. Lewis's opinion, the ALJ stated:

> This opinion is persuasive as [*sic*] generally consistent with the totality of the objective medical evidence of record including the subsequently received medical evidence of record.

TR 24.

Consultative examiner Dr. Leveck gave an opinion on Plaintiff on November 11, 2022  (TR 769-74), which was summarized by the ALJ as follows:

> Consultative examiner, Terrence Leveck, M.D., submitted an opinion at Exhibit 10F finding the claimant could lift and carry 20 lbs. occasionally with limitation in his dominant extremity due to

13

his right shoulder symptoms as described in allegation #6 and generally due to his low back pain. He could stand and walk for eight hours out of eight if allowed 5 minutes [*sic*] breaks every 30 minutes to accommodate his angina pectoris. He can sit for eight hours out of eight if allowed to stand for five minutes every 15 minutes to prevent paresthesias [*sic*] in his left lower extremity. Fine motor function is intact.

TR 24.

When evaluating Dr. Leveck's opinion, the ALJ stated:

This opinion is not consistent with the totality of the objective medical evidence of record regarding physical conditions and appears to be based, in part, on his subjective reports on this day to the non-treating examiner.

TR 24.

As the new regulation states, the ALJ will not defer or give any specific evidentiary weight to any medical opinion, even a treating source. 20 CFR § 404.1520c(a). As explained by Magistrate Judge Poplin:

The ALJ must "evaluate the persuasiveness of [the] medical opinions and prior administrative medical findings" using five factors, including the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of the SSA's disability program's policies and evidentiary requirements." *Id.* § 404.1520c(a), (c). Of these five factors, "the most important ... are supportability and consistency." *Id.* § 404.1520c(a), (b)(2). The supportability factor states that, "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." *Id.* § 404.1520c(c)(1). The consistency factor states that, "the more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." *Id.* § 404.1520c(c)(2).

14

For these two factors, the ALJ is required to "articulate how they considered the medical opinions and prior administrative medical findings" and specifically "explain how they considered the supportability and consistency factors" in "determining how persuasive they find a medical source's medical opinions or administrative medical findings to be." *Id.* § 404.1520c(a), (b)(2). This "mandatory articulation requirement" has been said to "serve the same purposes as the good reasons requirement of the treating physician rule" because "by requiring ALJs to articulate their analysis of the most important factors to consider ... the requirement permits meaningful judicial review" and "ensures that claimants will receive an explanation of why the ALJ found each medical opinion, including those of their treating physician, to be persuasive, partially persuasive, or not persuasive." *Lorraine R. v. Comm'r of Soc Sec. Admin.*, No. 3:20-cv-00396, 2022 U.S. Dist. LEXIS 166503, 2022 WL 4232839, *4–*5 (S.D. Ohio Sept. 14, 2022).

As to what the ALJ must do to meet this articulation requirement, "the Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement." *Gavre v. Comm'r of Soc. Sec.*, No. 3:20-CV-00551-DJH-CHL, 2022 U.S. Dist. LEXIS 45174, 2022 WL 1134293, at *4 (W.D. Ky. Jan. 3, 2022). However, "district courts applying the new regulations both within this circuit and throughout the country consistently apply the articulation requirement literally," *id.*, in that they require the ALJ to "provide a coherent explanation of their reasoning," *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 U.S. Dist. LEXIS 43162, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021), "clearly explain their consideration of the opinion and identify the evidence supporting their conclusions," *Lester v. Saul*, No. 5:20-CV-01364, 2020 U.S. Dist. LEXIS 247187, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), and otherwise "explain how they considered the supportability and consistency factors as to each medical opinion." *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 20201 U.S. Dist. LEXIS 42246, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021). As some courts have framed the requirement, the ALJ must "build an accurate and logical bridge between the evidence and the ALJ's conclusion." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 U.S. Dist. LEXIS 116343, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)).

Specific instances in which courts have found an ALJ did not meet the articulation requirement include when the ALJ: (1) failed to account for all of the opined limitations in a medical source's

15

opinions—whether in accepting or discounting the limitations, *see Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 907 (E.D. Mich. 2021) ("For Dr. Trostinkaia, the ALJ gave a terse reason for rejecting the opinion that the plaintiff had to take breaks to lie down during the workday, but there was no mention of the other limitations Dr. Trostinkaia found that were inconsistent with sedentary work."), (2) failed to specify which parts of a medical opinion were consistent or inconsistent with the record, *Israel v. Comm'r of Soc. Sec. Admin.*, No. 2:20-cv-11812, 2021 U.S. Dist. LEXIS 172090, 2021 WL 4130559, at \*4 (E.D. Mich. Aug. 13, 2021), or (3) "failed to specifically cite to any examination findings or other evidence in the medical record" in support of their analysis. *King v. Kijakazi*, No. 1:20-CV-196-TAV-HBG, 2021 U.S. Dist. LEXIS 150963, 2021 WL 3520695, at \*7 (E.D. Tenn. July 21, 2021), *report and recommendation adopted sub nom*, 2021 U.S. Dist. LEXIS 149870, 2021 WL 3516659 (E.D. Tenn. Aug. 10, 2021); *see also Hardy*, 554 F. Supp. 3d at 907 ("The ALJ did not refer to any of these medical findings in the record"). Essentially, courts have found the ALJ failed to meet the articulation requirements when they either failed to specify which portions of the medical source's opinion they agreed or disagreed with or failed to specify which portions of the record supported their conclusion.

As a final note, when citing to the record evidence in support of their conclusion, it is not sufficient that the ALJ previously provided an extensive review of the record evidence before discussing the opinions, *see Hardy*, 554 F. Supp. 3d at 907; *Miles v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-410, 2021 U.S. Dist. LEXIS 202840, 2021 WL 4905438, at \*5 (S.D. Ohio Oct. 21, 2021), particularly when there is contradictory evidence within the ALJ's recitation. *See Hardy*, 554 F. Supp. 3d at 907. Similarly, it is not sufficient for the Commissioner to point to evidence in the record that would support the decision. *See id.* Rather, the ALJ must explicitly point out which evidence they are relying on to support their finding as to the persuasiveness of the opinion, so that the reviewing court and claimant can follow their logic.

*Sparks v. Kijakazi*, No. 2:21-CV-102-DCP, 2022 U.S. Dist. LEXIS 176139, 2022 WL 4546346, at \*6-7 (E.D. Tenn. Sept. 28, 2022) (citation modified).

In reviewing the parties' arguments, applicable portions of the record, and relevant case law, the Court finds the ALJ did not provide a sufficient explanation for relying on the findings of

16

state agency medical consultant Dr. Lewis and discounting consultative examiner Dr. Leveck's findings. *See* § 404.1520c(c)(1-2). Because the Court is unable to meaningfully review the ALJ's evaluation of these opinions, this error is not harmless and remand is required.

For Dr. Lewis, though the ALJ referred to the consistency of his medical opinion with "the totality of the objective medical evidence of record including the subsequently received medical evidence of record," the ALJ failed to specify which pieces of evidence in the totality align with Dr. Lewis's findings. TR 24. While Defendant is correct that the ALJ is not required to formulaically repeat analysis of medical evidence when explaining her decision (Docket No. 17, p. 8-9), Plaintiff is correct that the ALJ's statement "does not explain how or why this evidence supported Dr. Lewis's light RFC." Docket No. 14, p. 7. Specifically, while the word "consistent" is used, the ALJ generally referred to the entire record in observing this consistency, which does not meet the articulation requirement in §§ 404.1520c(a), (b)(2), and (c)(2). TR 24; *see also Lorraine R. v. Comm'r of Soc Sec.*, No. 3:20-cv-00396, 2022 U.S. Dist. LEXIS 166503, 2022 WL 4232839, *4-*5 (S.D. Ohio Sept. 14, 2022) (explaining the articulation requirement "ensures that claimants will receive an explanation of why the ALJ found each medical opinion . . . to be persuasive, partially persuasive, or not persuasive"); *Bly v. Dudek*, No. 3:24-cv-00957, 2025 U.S. Dist. LEXIS 86102, 2025 WL 1316497 at *10 (M.D. Tenn. May 6, 2025), *quoting Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (a failure to meet "minimum levels" of articulation of consistency and supportability "frustrates" the court's ability to determine if the ALJ's decision was supported by substantial evidence).

The ALJ's opinion contains no explicit discussion of the supportability of Dr. Lewis's findings, despite such articulation being mandatory pursuant to 404.1520c(c)(1). *See* TR 24. Therefore, the Court is unable to identify the evidence supporting the ALJ''s determination with

17

regard to Dr. Lewis, and thus must remand. *See Sparks*, 2022 U.S. Dist. LEXIS 176139, 2022 WL 4546346, at *7.

For Dr. Leveck, the ALJ stated the opinion was "not consistent with the totality of the objective medical evidence of record regarding physical conditions," which does not identify which pieces of medical evidence are not "consistent" with Dr. Leveck's findings. TR 24. Additionally, the ALJ stated Dr. Leveck's opinion "appears to be based, in part, on [Plaintiff's] subjective reports on this day to the non-treating examiner." *Id.* The Court agrees with Plaintiff that the ALJ did not explain what subjective complaints Dr. Leveck appeared to rely upon. Instead, the ALJ used the same language ("appears") which was found to have frustrated judicial review in the *Bly* decision, and failed to explain her reasoning at the minimum articulation requirement level. *See* § 404.1520c; *Bly*, 2025 U.S. Dist. LEXIS 86102, 2025 WL 1316497, at *13. Further, the ALJ did not discuss supportability to the articulation requirement level. TR 24; *see* § 404.1520c. Thus, as the ALJ did not fulfill her duty under the new regulations to properly evaluate the opinions of Dr. Lewis and Dr. Leveck, this case must be remanded for further evaluation of the opinion evidence.

## 2. Subjective Complaints of Pain and Other Symptoms

Plaintiff contends that the ALJ failed to adequately evaluate Plaintiff's symptom allegations pursuant to 20 C.F.R. § 404.1529 and SSR 16-3p. Docket No. 14, p. 4. Specifically, the ALJ found Plaintiff's statements regarding his symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision," which Plaintiff argues is "the only analysis of Plaintiff's allegations in the entire decision." *Id.* at 10, quoting TR 21. Plaintiff maintains "the ALJ did not explain what evidence within her summary was inconsistent with Plaintiff's allegations," nor did she explain why the chosen evidence was

18

inconsistent. *Id.*, quoting TR 21. Plaintiff also questions whether the ALJ's "blanket approach to rejecting corroborative evidence is proper" under SSR 16-3p, as the ALJ found Plaintiff's family member statements unpersuasive in part due to her contention that "opinions from family members are often wrought with inherent biases . . . ." *Id.*, quoting TR 24. Plaintiff asserts there is no "logical bridge" between the evidence and the result in the ALJ's determination, nor is there a detailed set of reasons underlying her determinations regarding Plaintiff's symptoms. *Id.* at 11-12.

Defendant responds that the ALJ properly considered the nature of Plaintiff's medical treatment, including his allegations of disability. Docket No. 17, p. 11-12. Defendant references the ALJ's prior review of Plaintiff's treatment evidence in the record, in which the ALJ found that Plaintiff's mental symptoms improved with medication without side effects and that Plaintiff was noncompliant with his cardiac medications and cardiology follow-up, among other evidence. *Id.* at 11. Defendant contends the ALJ thus "properly considered the record and found Plaintiff's allegations inconsistent with greater physical or mental limitations." *Id.* at 12.

Plaintiff replies that "the Commissioner's *post hoc* rationalizations must be disregarded," as the ALJ's symptom evaluation was "inadequate" because it left out "consideration of several factors beyond the objective medical evidence," as required by 20 C.F.R. § 404.1529 and SSR 16-3p. Docket No. 18, p. 4. Plaintiff points to the Defendant's contention that the treatment was "modest" and thus inconsistent with disability, that Plaintiff's mental symptoms improved with medication, and that Plaintiff was "noncompliant with cardiac medications and follow-up," arguing that "the ALJ made no such finding[s]" and did not explain how these findings "were relevant to the symptom evaluation." *Id.* (footnote omitted). Plaintiff thus argues the ALJ "provided only a conclusion about Plaintiff's symptoms, without actually showing her work." *Id.* at 5.

19

"According to 42 U.S.C. § 423(d)(5)(A), subjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 403 (6th Cir. 2018), *quoting Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The Court must first "examine whether there is objective medical evidence of an underlying medical condition." *Buxton*, 246 F.3d at 773, *quoting Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (internal quotation marks omitted). "If there is, we then examine: (1) whether this evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). Moreover, "[a]llegations of pain . . . do not constitute a disability, unless the pain is of such a debilitating degree that it prevents an individual from participating in substantial gainful employment." *Bradley v. Sec'y of Health & Human Servs.*, 862 F. 2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), *construing* 20 C.F.R. § 404.1529(c)(2). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are

not credible. *See, e.g.*, *Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the instant case, the ALJ discussed the Plaintiff's symptoms and made her determination:

> The claimant testified he is five feet four to five feet five inches tall and weighs 240 pounds. He has not driven since he was involved in a wreck over a year prior. He testified he has chronic back pain in his cervical spine from fractures. He has pain at 8/10 before he takes Advil. He has the same amount of pain in his lower back. He has a torn rotator cuff in his right arm and COPD per his testimony. He described panic attacks that last six hours to a couple of days. He is able to take care of his personal needs such as dressing and bathing. He is able to prepare simple meals but he does have to sit/stand in 5-8 minute increments. He has chest pain that he rated as 4-5 on a chronic basis and headaches from elevated hypertension. He has not seen his minor children in a year due to anxiety.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

TR 21.

The ALJ noted the statements by Plaintiff's family:

> There are statements from the claimant's mother and sister/brother in law at Exhibits 17E and 18E. While these statements have been considered amongst the totality of the evidence, they are not medical opinions supported by objective medical evidence. Furthermore, these opinions are not persuasive as opinions from family members are often wrought with inherent biases and not supported by the totality of the evidence.

TR 24.

The Court finds error where the ALJ found the Plaintiff's statements regarding his

symptoms to be "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." TR 21. Such a statement by the ALJ is ambiguous in that it is not clear whether the ALJ means the record is contradictory to the Plaintiff's allegations, or if in balancing multiple narratives the ALJ made a determination to pick one and not the others. *See Mebane v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 718, 723 (S.D. Ohio June 10, 2019) ("such conclusion lacks adequate explanation of which symptoms are inconsistent with the evidence and how [the ALJ's] evaluation of those symptoms led to his conclusion."). While Defendant argues the ALJ made this determination as a resolution of conflicting allegations of symptoms, this explanation is absent from the ALJ's discussion. Docket No. 17, p. 11-12; *see* TR 21. This finding is unsupported by substantial evidence "absent the required explanation by the ALJ" as to how the medical evidence contradicts Plaintiff's specific statements regarding his symptoms. *Mebane*, 382 F. Supp. 3d at 723; *see* SSR 16-3p at *8 ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions.").

Regarding the statements by Plaintiff's family, under 20 C.F.R. § 404.1529(a) and (c)(4), nonmedical sources such as family statements will be considered by the ALJ, but in the Sixth Circuit there is no requirement for ALJs "to articulate in the written decision how they consider evidence from nonmedical sources, which would include . . . statements from Plaintiff's family members." *Page v. Comm'r of Soc. Sec.*, No. 2:21-cv-00166-SKL, 2022 U.S. Dist. LEXIS 172626, 2022 WL 4455975, at *7 (E.D. Tenn. Sept. 23, 2022); *see* 20 C.F.R. § 404.1520c(d). As stated by Judge Lee:

> Courts . . . in the Sixth Circuit have found harmless error when an ALJ fails to discuss third-party reports or statements that are "repetitive of the plaintiff's assertions." *Weaver v. Comm'r of Soc.*

22

*Sec.*, 2015 U.S. Dist. LEXIS 335, 2015 WL 64873, at *10; *see also Beckett v. Comm'r of Soc. Sec.*, No. 1:17-cv-00303-TWP-SKL, 2018 U.S. Dist. LEXIS 222155, 2018 WL 7254710, at *10 (E.D. Tenn. Oct. 5, 2018), *adopted in pertinent part*, 2019 U.S. Dist. LEXIS 6349, 2019 WL 183830 (E.D. Tenn. Jan. 14, 2019); *Ellis v. Astrue*, No. 3:11-CV-535, 2012 U.S. Dist. LEXIS 153309, 2012 WL 5304203, at *4 (E.D. Tenn. Oct. 4, 2012) (finding that statements from claimant's daughter are "basically cumulative, and like impairment allegations made by Ellis, are unsupported by the medical and other evidence," and concluding that "[a]lthough some comment on the statement by the ALJ might have at least removed the statement as an issue, a remand would serve no practical purpose, would not alter the ALJ's findings, and would be a waste of judicial and administrative resources."), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 153310, 2012 WL 5304201 (E.D. Tenn. Oct. 25, 2012); *Fouasnon v. Comm'r of Soc. Sec.*, No. 1:21-CV-00484-DAR, 2022 U.S. Dist. LEXIS 145863, 2022 WL 3281826, at *15 (N.D. Ohio June 15, 2022) ("An ALJ does not commit reversible error where the third-party evidence not articulated is cumulative of the other evidence of record that the ALJ did consider and articulate."), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 153489, 2022 WL 3681792 (N.D. Ohio Aug. 25, 2022). At least one out-of-circuit district court has similarly held: "While the ALJ did not specifically go through each of the other nonmedical opinions, as she did for plaintiff's opinions, 'any error in failing to do so is harmless because 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.' " *Johnston v. Kijakazi*, No. 20-cv-01366-PAB, 2022 U.S. Dist. LEXIS 82764, 2022 WL 1439112, at *8 (D. Col. May 6, 2022) (quoting *Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013)).

*Page*, 2022 U.S. Dist. LEXIS 172626, 2022 WL 4455975, at *7 (E.D. Tenn. Sept. 23, 2022) (citation modified).

In the instant case, while the ALJ appears to have partially discounted the family member statements due to "inherent biases," the ALJ is also correct that they are not medical opinions, and are thus not due equal treatment in the ALJ's analysis. TR 24. Further, these assertions are consistent with Plaintiff's own assertions (Plaintiff observes "they do appear to corroborate his [own] allegations"), so the third-party evidence is likely "cumulative of the other evidence of

23

record that the ALJ did consider and articulate." Docket No. 14, p. 10; *Page*, 2022 U.S. Dist. LEXIS 172626, 2022 WL 4455975, at *7. While the ALJ in this case did not adequately consider and articulate Plaintiff's statements, as discussed above, this issue will be solved on remand, and thus the consideration of cumulative statements by Plaintiff's family will similarly be addressed upon remand for further proceedings.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 12) is **GRANTED**. This matter is **REMANDED** for further administrative proceedings consistent with this Memorandum Opinion.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

24